IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**BRYMON HAMP, JR.**                                                                                      **PLAINTIFF**

**v.**                                                 **No. 3:22CV41-DAS**

**NATHAN BURL CAIN, ET AL.**                                           **DEFENDANTS**

**MEMORANDUM OPINION**

`This matter comes before the court on the *pro se* prisoner complaint of Brymon Hamp, Jr., who challenges the conditions of his confinement under 42 U.S.C. § 1983 – which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit.[1] The plaintiff alleges that the sole remaining defendant, Nurse Practitioner Angela Brown, violated the Eighth Amendment prohibition against cruel and unusual punishment by withdrawing permission for him to use a wheelchair and a walking cane. Doc. 1 at 7. Hamp alleges that he needs both devices because he has multiple sclerosis.

The defendant has moved [76] for summary judgment, arguing that the instant case should be dismissed for failure to exhaust administrative remedies. The plaintiff has responded to the motion, and the parties have submitted additional briefing. The matter is ripe for resolution. For the reasons set forth below, the defendant's motion [76] for summary judgment will be granted, and the instant case will be dismissed without prejudice for failure to exhaust administrative remedies.

---

[1] *See* 42 U.S.C. § 1997e(a); *see also Williams v. Henagan,* 595 F.3d 610 (5th Cir. 2010) (PLRA applies when inmate is incarcerated at the time he files suit, even if he was released during pendency of suit).

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204

F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

### Exhaustion of Administrative Remedies

It is clear on the record before the court that the plaintiff did not exhaust his administrative remedies before filing the instant suit, as required under the Prison Litigation Reform Act:

> No action shall be brought with respect to prison conditions under [42 U.S.C.§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other prison until such administrative remedies as are available are exhausted.

*See* 42 U.S.C. § 1997e(a). Congress enacted the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e *et seq.* – including its requirement that inmates exhaust their administrative remedies prior to filing suit – in an effort to address the large number of prisoner complaints filed in federal courts. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). The exhaustion requirement serves to weed out frivolous claims from the colorable ones. *Id*. at 203.

The requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); see also *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict

approach" to the PLRA's exhaustion requirement)(citing *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty.Med.Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11, 2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules").  Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process."  *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012).  "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact."  *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).  As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury."  *Id*. at 272.  A prisoner should face a significant consequence for deviating from prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules.  A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections ("MDOC") the authority to adopt an administrative review procedure at each of its prisons. Under this statutory authority, MDOC created the Administrative Remedy Program ("ARP")

through which an inmate may seek formal review of a grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994).

At the screening phase of the ARP process, an inmate must submit his grievance in writing to the prison's Legal Claims Adjudicator within thirty days of the incident.[2] *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator initially screens the grievance and determines whether to accept it into the formal ARP process. *Id*. This screening phase operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances.

As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance – or the appeal of a rule violation. *Woodford, supra*. Hence, rejection of a grievance during the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also Robinson v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana initial screening provision of the prison grievance process).

---

[2] If an inmate is found guilty of a prison rule violation, he may appeal that finding through the ARP process. Inmate Handbook, Section VIII, Paragraph XI. However, the appeal of a rule violation through the ARP is a one-step process (in contrast to the two-step process for resolving grievances). *Id*.

However, if the defects in the original grievance were minor ("technical" or "matters of form") an inmate may submit a corrected grievance within five days of the rejection:

> If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf ("Inmate Handbook, Chapter VIII, Administrative Remedy Program") (last visited April 3, 2019)).[3]

If accepted as a valid grievance, the complaint is forwarded to the appropriate official, who then issues a First Step Response to the complaining inmate.[4] *Id*. *Howard, supra*. An inmate may pursue only one grievance at a time; additional requests "will be logged and set aside for handling at the Director's discretion":

> If an inmate submits additional requests during the period of Step One review of his request, *the first request will be accepted and handled*.[5] The others will be logged and set aside for handling at the Director's discretion. A maximum of ten requests will be logged. Requests above that number will be returned to the inmate and not filed.

Inmate Handbook, Chapter VIII, Administrative Remedy Program, VII(A) (emphasis added).

If the inmate is unsatisfied with the First Step response, he may continue to the Second Step by completing an appropriate grievance form and sending it to the Legal Claims Adjudicator. *Id.* The Superintendent, Warden, or Community Corrections Director will then

---

[3] The court will refer to this document as the "Inmate Handbook."

[4] The submission and screening of the plaintiff's complaints do not constitute the beginning of the ARP process. Instead, the formal ARP grievance process begins when the inmate's submission is "accepted" as a grievance *after* initial screening. Inmate Handbook, Chapter VIII, Paragraph IV(H).

[5] Hence, only the first grievance will be accepted; while it is pending, any subsequent ones will be backlogged. The grievance process will not begin for the second grievance until the first grievance has been resolved. Likewise, the process will not begin for the third grievance until the second has been resolved, and so on – until no more grievances are backlogged. The backlogging of grievances in this manner does not run afoul of the Constitution or the Prison Litigation Reform Act. *See Wilson v. Epps*, 776 F.3d 296, 301 (5th Cir. 2015).

issue a final ruling, or Second Step Response, which completes the ARP grievance process. *Id*. Issuance of the Second Step Response is one of two ways to complete the process.[6] If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id*.

The Inmate Handbook requires that a grievance "present as many facts as possible to answer all the questions who, what, when, where, and how concerning the incident." *See Pinkton v. Jenkins*, 2019 WL 1089087, *3 (N.D. Miss. 2019). Although a plaintiff is "not required to present specific legal theories in his grievances, . . . he [is] required to provide facts and to alert prison officials of the problem in order to give them an opportunity to address it." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). "[T]his portion of [MDOC's] ARP requires that all officials involved be named or at least referenced in description." *Holton v. Hogan*, 2018 WL 707544, *3 (S.D. Miss. 2018); *see also Pinkton*, 2019 WL 1089087 at *3 (dismissing claims against two defendants for failure to exhaust administrative remedies where plaintiff never filed grievance regarding the actions of the two defendants).

As discussed below, the plaintiff initiated a defective grievance, and he received a response notifying him that it was defective and explaining how to proceed with a corrected grievance. The plaintiff did not follow these instructions. Instead of filing a corrected grievance, he sent letters to various prison officials, complaining about the situation. Eventually, he filed the instant case – *then*

---

[6] The grievance process will also be deemed complete if more than 90 days elapses from the beginning of the process (acceptance of the grievance after screening) without issuance of a Second Step Response Form (the normal way to complete the grievance process). Inmate Handbook, Chapter VIII, Paragraph VIII(A). In the absence of a response in a step of the ARP process, the inmate may not simply wait for the 90-day deadline to expire. *Id*. Instead, for each step without a response, he must wait until the deadline for a written response for that step expires, then move to the next step in the process. *Id*. If the inmate has submitted the proper forms for each step, yet 90 days elapses without issuance of a Second Step Response Form, then he has completed the grievance process and may seek relief in State or Federal court.

filed another grievance about the same incident. Ultimately, Mr. Hamp did not exhaust his administrative remedies before filing the instant suit.

**The Plaintiff's Grievances**

The plaintiff's initial grievance regarding the removal of his walking aids was filed on June 21, 2021. Doc. 76-1 at 1. In that grievance, he alleged that, on May 26, 2021, Nurse Brown had ordered a prison guard to take his cane.[7,8] *Id*. On June 22, 2021, the next day, ARP Director Richard Pennington responded on a standard form, stating that, in order to resubmit a valid grievance, it must contain only one complaint or request. *Id*. at 3. Rather than submit a corrected grievance within 5 days, on July 28, 2021, over a month later, Hamp sent a letter to Director Pennington asking to be excused from strictly following the ARP procedure. *Id*. at 4. The letter was not in the form of a proper ARP grievance, and the plaintiff received no response. The plaintiff sent another letter to Director Pennington on August 11, 2021, complaining about delays in legal mail. *Id*. at 5. Again, the letter was not a proper ARP grievance, and he received no response.

Mr. Hamp initiated a second grievance alleging that Nurse Brown cause his wheelchair or

---

[7] The plaintiff had previously submitted a grievance dated May 24, 2021, complaining of generally poor care and accommodation for his multiple sclerosis, including the allegation that "[o]n Feb 22, 2021 … security and medical took [Hamp's wheelchair]." Doc. 76-1 at 8. As this grievance was filed two days *before* the incident with Nurse Practitioner Brown – and does not mention her by name – it has no bearing on the June 21, 2024, grievance related to her. In addition, the May 24 grievance was not filed within 30 days of the incident, as required. *See Wheater v. Shaw*, 719 Fed. Appx. 367, 369-70 (5th Cir. 2018).

[8] On May 27, 2021, the plaintiff initially sent two letters complaining of the incident with Nurse Practitioner Brown, one to Mississippi State Penitentiary Superintendent Morris, the other to Medical Director Dr. James Glisson. Docs 1-1, 1-2. Neither of these contained the language "This is a request for administrative remedy" at the top; as such, neither constituted a proper ARP grievance. *See* Inmate Handbook, Chapter VIII, § IV. D. In addition, the letters were not sent through the Inmate Legal Assistance Program Office, as required under § IV.E of the Inmate Handbook. In any event, the plaintiff has not alleged that these letters constituted proper grievances.

cane to be taken from him; however, he did not do so until March 24, 2022 – a week *after* filing the instant suit on March 17, 2022. *See* Declaration of Jospeh Cooley, Doc 10-1 ¶ 4. As such, he cannot use that grievance to show exhaustion of his administrative remedies regarding the present suit. Regardless, the March 24, 2022, grievance was placed on backlog, and Hamp withdrew it and all other backlogged grievances on June 12, 2022. *Id*. Thus, Hamp never pursued the March 24 grievance to completion, and, for that reason, as well, he cannot use it to show that he exhausted his administrative remedies before filing the instant suit. Though the plaintiff filed two grievances regarding the incident with Nurse Brown, he did not pursue either one to completion, and he filed the second grievance after initiating the present suit. Mr. Hamp has not exhausted his administrative remedies as to his allegations against Nurse Brown, and the instant case must be dismissed for that reason.

## Conclusion

For the reasons set forth above, the motion by the defendants for summary judgment will be granted, and the instant case will be dismissed without prejudice for failure to exhaust administrative remedies. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 20th day of June, 2024.

/s/ David A. Sanders
DAVID A. SANDERS
UNITED STATES MAGISTRATE JUDGE